Jorge **CARABALLO** and Digna Caraballo, his wife, Plaintiffs,

v.

**SOUTH STEVEDORING, INC.**, a Florida Corporation, Harrington & Company, Inc., a Florida Corporation, and Sea–Land Service, Inc., a Florida Corporation, Defendants.

No. 96–0306–CIV.

United States District Court, S.D. Florida.

July 3, 1996.

Mimi L. Sall, Ft. Lauderdale, FL, for Plaintiffs.

A. Michelle Otero, Miami, FL, James W. McCready, III, Coral Gables, FL, for Defendants.

## ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS and GRANTING DEFENDANT SEA LAND'S MOTION TO STRIKE CLAIM FOR PUNITIVE DAMAGES

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court upon separate Motions to Dismiss filed by Defendants South Stevedoring, Inc. ("South Stevedoring") and Harrington & Company, Inc. ("Harrington") on February 6, 1996, and by Defendant Sea–Land Service, Inc. ("Sea–Land") on February 21, 1996. In addition, Defendant Sea–Land filed a separate Motion to Strike Claim for Punitive Damages on February 21, 1996. After requesting and receiving an extension of time, Plaintiffs filed responses to all three motions on March 11, 1996.

### I. Procedural History

After months of procedural roadblocks, Defendants' Motions to Dismiss are finally ripe for adjudication. By Order dated April 11, 1996, the Court directed Plaintiff Jorge Caraballo to file an affidavit as to whether he had properly exhausted his administrative remedies. Plaintiff's counsel, A. Michelle Otero, filed an affidavit and supporting documents on April 26, 1996.

In the interim, Plaintiff's counsel filed a Suggestion of Death, whereby she notified the Court that Mr. Caraballo had died on March 19, 1996. On May 1, 1996, the Court directed all parties to file memoranda on the issue of how the death of Mr. Caraballo affects the above-styled case, particularly the pending Motions to Dismiss. The parties filed their memoranda on May 15, 1996.

The Court subsequently directed Plaintiffs to substitute the proper party in place of the deceased Plaintiff in accordance with Federal Rule of Civil Procedure 25(a)(1). In the interim, the action was abated pursuant to Rule 25.

On June 25, 1996, Plaintiff Digna Caraballo filed a Motion for Substitution of Party, seeking to be substituted as the proper party by virtue of her appointment as personal representative of her late husband's estate. Defendants South Stevedoring and Harrington argue in response that Mrs. Caraballo lacks standing to proceed with this suit because the probate court has not yet entered an order of appointment. Defendants concede that Mrs. Caraballo will likely be appointed, and do not oppose an extension of time in which she may comply with Rule 25 and the Florida Statutes. In the interest of disposing of these long-pending motions, the Court will proceed under the assumption that Mrs. Caraballo is the proper party.

### II. Factual Background

Mr. Caraballo, now deceased, was a harbor worker employed by Defendants. Defendants South Stevedoring and Harrington are subcontractors working at the direction of

Defendant Sea–Land. Mr. Caraballo alleges that Defendants unlawfully refused to honor his reasonable requests for accommodation in the wake of a diagnosis that he suffered from interstitial lung disease and pulmonary fibrosis. He further alleges that Defendants continued to require him to work around hazardous materials and airborne particles, in contravention of his doctors' orders and of regulations promulgated by the Occupational Safety and Health Administration.

Mr. Caraballo seeks compensatory and punitive damages pursuant to state and federal statutes. Both he and his wife seek compensatory and punitive damages pursuant to state common law. Defendants collectively seek to dismiss all but three counts, and to strike Mr. Caraballo's claims for punitive damages.

### III. Legal Standard

A motion to dismiss will be granted where it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations. "[D]ismissal is justified only when the allegations of the complaint itself clearly demonstrate that plaintiff does not have a claim." 5A Wright & Miller, *Federal Practice and Procedure* § 1357; *see also Bradberry v. Pinellas County*, 789 F.2d 1513, 1515 (11th Cir.1986). For the purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all facts alleged by the plaintiff are accepted as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). The issue is not whether the plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

### IV. Analysis

A. Counts I–III

Mr. Caraballo alleges that Defendants violated his rights under the Florida Civil Rights Act ("FCRA"), Fla.Stat. §§ 760.01 et seq. Defendants do not seek to dismiss these counts on the merits, but instead because of Mr. Caraballo's alleged failure to exhaust his administrative remedies. They argue that his allegation to the contrary notwithstanding, Mr. Caraballo did not file the appropriate documents with the Florida Commission on Human Relations ("FCHR").

Mr. Caraballo's counsel subsequently provided copies of charges filed with the FCHR. (Pl.Resp.Ex. B.) From the face of the charges, the Court was unable to discern the date on which they were filed, and consequently whether they were timely under the statute. In response to the Court's April 11, 1996 Order, counsel filed an affidavit addressing this issue. She averred that Mr. Caraballo's charge was originally forwarded to the EEOC on July 31, 1995. (Otero Aff. ¶ 2.) After some administrative problems encountered by Plaintiffs, a second charge was forwarded to the EEOC on August 30, 1995, along with a letter of representation. (Pl.Aff. ¶¶ 2–4.)

The Complaint alleges that Mr. Caraballo began suffering physically on October 14, 1994. (Compl. ¶ 14.) He was examined by one physician on October 18, 1994, and by a second physician on January 6, 1995. The latter made a specific diagnosis of interstitial lung diseases and pulmonary fibrosis (Compl. ¶ 14.) After Defendants allegedly refused to reasonably accommodate Mr. Caraballo, the physicians wrote to Defendants, emphasizing Mr. Caraballo's need for a change in schedule, personal protective equipment, and other accommodations. (Compl. ¶ 14, Ex. B.) Both letters were written in the last week of May 1995, as was a letter by Mr. Caraballo to Defendant Harrington's Port Manager. (Compl.Ex. A.)

In the absence of specific arguments by the parties, and drawing all inferences in favor of the non-movant, the Court will deem that Mr. Caraballo's claim arose in the waning days of May 1995, when Plaintiff submitted the opinions of his doctors that his failing health required some sort of workplace accommodation. Section 760.11 requires that a putative plaintiff file a charge of discrimination with the FCHR within 365 days of the alleged discrimination. Mr. Caraballo filed his charge on July 31, 1995, well under the 365 days permitted by the statute. There-

fore, Mr. Caraballo's charge was timely filed, and Defendants' Motions to Dismiss must be denied.

Defendants' contention that Mr. Caraballo's claims for punitive damages under the FCRA do not survive his death is addressed in Section E., below.

### B. Count IV

In Count IV, Mr. Caraballo alleges that Defendant South has violated Mr. Caraballo's rights under the Americans With Disabilities Act, 42 U.S.C. § 12117(a). Defendant South argues that Mr. Caraballo failed to exhaust his administrative remedies, as evidenced by his failure to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") or the FCHR, as well as by his failure to provide a "right to sue" letter from the EEOC. *See* 42 U.S.C. § 2000e–5(e).

Mr. Caraballo has provided copies of the charges of discrimination he filed with the FCHR, in which all three Defendants are named. (Pl.Resp.Ex. B.; Otero Aff.Ex. B.) Moreover, in its reply memorandum, Defendant South no longer disputes Mr. Caraballo's contention that he properly exhausted his administrative remedies. The Motion to Dismiss is therefore denied as to Count IV.

### C. Counts VII–IX

■ Counts VII–IX allege violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* Defendants do not challenge the sufficiency of Mr. Caraballo's allegations, but rather seek to strike the claims for punitive damages. The Court's inquiry is two-fold. It must first determine whether punitive damages are available under the ADEA. If punitive damages are in fact contemplated by the statute, the Court must further ascertain whether they can be claimed on behalf of a deceased individual.

Despite Defendants' contention to the contrary, the issue of the availability of punitive damages under the ADEA is not well-settled. This uncertainty stems from changes promulgated by the 1991 amendments to the Civil Rights Act of 1965. The Court chooses to adopt the position of the District Court for the Middle District of Florida, which has held that the ADEA, as amended by the Civil Rights Act of 1991, "permit[s] the recoupment of compensatory and punitive damages." *Bender v. The Salvation Army,* 830 F.Supp. 1454, 1456 (M.D.Fla.1993).

Defendants rely on *Pettis v. Brown Group Retail, Inc.,* 896 F.Supp. 1163, 1165 (N.D.Fla. 1995) in support of the contrary proposition. Careful analysis of Judge Vinson's opinion in *Pettis* reveals that *Pettis* and *Bender* are not necessarily inconsistent. The Eleventh Circuit case on which Judge Vinson relies was decided long before the 1991 amendments. Moreover, Judge Vinson notes that "[l]iquidated damages under the ADEA are intended to be punitive in nature." *Pettis,* 896 F.Supp. at 1165.

Defendants' contention that Mr. Caraballo's claims for punitive damages do not survive his death is addressed in Section E., below.

### D. Counts X–XVIII

■ A District Court may decline to exercise supplemental jurisdiction over a claim that "raises a novel or complex issue of State law" and "substantially predominates over the claim or claims over which the district court has original jurisdiction...." 28 U.S.C. § 1367(c).

Plaintiffs have together asserted eighteen causes of action. Fully half are common law claims, including intentional infliction of emotional distress and loss of consortium. The Court concludes that the common law claims would present issues of state law not appropriate for disposition in the same suit as Mr. Caraballo's employment discrimination claims. Trial of the issues together would engender confusion for a jury. Moreover, the common law claims would predominate over the federal employment discrimination claims over which the Court has original jurisdiction. Counts X through XVIII of the Complaint should therefore be dismissed without prejudice to file in state court, if Mrs. Caraballo be so advised.

### E. Survival of Claims for Punitive Damages

#### 1. ADEA and ADA

■ Mr. Caraballo seeks punitive damages pursuant to his claims under the ADEA, the ADA, and the FCRA. Defendants now contend that Mr. Caraballo's claims for punitive damages do not survive his death. In the absence of expressed contrary intent, the survival of a federal cause of action is a question of federal common law. *U.S. v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir.1993). The survival of the cause of action turns on whether the relief sought is "remedial" or "penal" in nature. *NEC Corp.*, 11 F.3d at 137. Punitive damages, which are generally imposed upon a defendant for a wrong against the public, are deemed penal in nature. *NEC Corp.*, 11 F.3d at 137; *Kilgo v. Bowman Transportation, Inc.*, 789 F.2d 859, 876 (11th Cir.1986).

■ The Supreme Court has expressly addressed the nature of liquidated damages under the ADEA, and has deemed such damages punitive in nature. *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 616–17, 113 S.Ct. 1701, 1709–10, 123 L.Ed.2d 338 (1993). Although the Court previously found that punitive damages are available under the ADEA, such claims do not survive Mr. Caraballo's death. *Smith v. Dept. of Human Services,* 876 F.2d 832, 837 (10th Cir.1989); *Duart v. FMC Wyoming Corp.,* 859 F.Supp. 1447, 1451 n. 2 (D.Wyo.1994). Mr. Caraballo's claim for punitive damages under the ADA is similarly misplaced. *See Earvin v. Warner–Jenkinson Co.,* 1995 WL 137437, *2 (E.D.Mo. March 10, 1995).

#### 2. FCRA

Because the FCRA is patterned after Title VII, "federal case law dealing with Title VII also applies to the FCRA." *Kelly v. K.D. Construction of Florida, Inc.,* 866 F.Supp. 1406, 1410 (S.D.Fla.1994); *see Fredette v. BVP Management Assoc.,* 905 F.Supp. 1034, 1036 (M.D.Fla.1995). Mr. Caraballo's claim for punitive damages under the FCRA should therefore be stricken as well. All claims for punitive damages, against all Defendants, are hereby STRICKEN from the Complaint.

### V. Conclusion

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendants' Motions to Dismiss Complaint be, and the same are hereby, GRANTED in part and DENIED in part as follows:

1. As to Counts I–III (FCRA), the Motions to Dismiss are DENIED.
2. As to Count IV (ADA against Defendant South), the Motion to Dismiss is DENIED.
3. As to Counts VII and VIII (ADEA against Defendants South and Harrington), the Motions to Dismiss are DENIED.
4. As to Counts X–XVIII (common law claims), the Motions to Dismiss are GRANTED and those counts dismissed without prejudice to refile in state court. It is

FURTHER ORDERED and ADJUDGED that Defendant Sea–Land's Motion to Strike Claim for Punitive Damages [as to Count IX] be, and the same is hereby, GRANTED.

DONE and ORDERED.