**James VAMPER, Plaintiff,**

v.

**UNITED PARCEL SERVICE, INC., a foreign corporation, Orlando Torres, and Tom Acquaviva, Defendants.**

No. 97–1872–CIV.

United States District Court,
S.D. Florida.

March 24, 1998.

Saul Smolar, Ft. Lauderdale, FL, for Plaintiff.

William Hamilton, Juan Enjamio, Miami, FL, for Defendants.

### ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court on Defendants' Motion To Dismiss Second Amended Complaint, filed December 22, 1997. Plaintiff filed a response on January 14, 1998, and Defendants filed a reply on January 30, 1998.

#### I. Background

Plaintiff's Second Amended Complaint contains the following allegations. Plaintiff began working for Defendant United Parcel Service, Inc. ("UPS") in 1981 as a package driver in the company's Hialeah, Florida facility. Plaintiff claims that throughout his employment at UPS, he "has been subject to racial epithets, racial violence, racially discriminatory actions, and retaliation for opposing race discrimination." (Second Am. Compl. ¶ 13.) As examples of such treatment, Plaintiff alleges that in 1995 UPS attempted to terminate him for a reckless driving charge for which he was later exonerated. The following year, in September 1996, Plaintiff claims that Defendant Orlando Torres ("Torres"), UPS's Hialeah Center Business Manager, contacted Ruben I. Del Monaco ("Del Monaco"), another UPS employee. Plaintiff claims that Torres falsely told Del Monaco that Plaintiff had asked Torres to investigate Del Monaco's involve-

ment in an unreported car accident. During this conversation, Torres allegedly referred to Plaintiff in Spanish as a "nigger." (*Id.* ¶ 27.)

Plaintiff further alleges that his harassment escalated after Del Monaco reported Torres's statements to UPS management: Plaintiff did not receive the pay and bonuses that other package drivers received, and Torres began to treat Plaintiff in a hostile manner, including threatening him with termination. Plaintiff alleges that in February 1997 UPS fabricated a charge that Plaintiff had interfered with company operations and used racial slurs toward Hispanic employees in order to suspend him. Plaintiff claims that the lack of any evidence supporting these charges forced UPS to withdraw the suspension. Finally, Plaintiff alleges that in May 1997 his supervisor, Tom Acquaviva ("Acquaviva"), while accompanying Plaintiff on his route, kicked him from behind on the ankle. Plaintiff claims that UPS did not discipline Acquaviva for this act of violence. Although still employed at UPS, Plaintiff alleges that he has been demoted to a loader position, continues to suffer harassment for opposing race discrimination, and is constantly threatened with termination. Plaintiff claims that UPS has offered him money to drop any claims he may have against the company.

Defendants move to dismiss all seven counts in Plaintiff's Second Amended Complaint on two separate grounds: (1) Counts I, II, III, and VI fail to state a claim upon which relief can be granted and (2) Counts IV, V, VI, and VII, which are claims under state law, do not arise from facts sufficiently related to Plaintiff's federal claims in order for this Court to exercise supplemental jurisdiction over them.

## II. Legal Standard

▮ A motion to dismiss will be granted only where it is clear that no set of facts consistent with the allegations could provide a basis for relief. "It is well established that a complaint should not be dismissed for failure to state a claim pursuant to Fed.R.Civ. Pro. 12(b)(6) 'unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief.'" *Bradberry v. Pinellas County*, 789 F.2d 1513, 1515 (11th Cir .1986) (quoting *Conley v. Gibson*, 355

U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). For purposes of a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept as true all facts alleged by the plaintiff. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The issue is not whether the plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir.1986) (citation omitted).

## III. Analysis

### A. Plaintiff Has Stated a Claim in Counts I and III

Count I of Plaintiff's Second Amended Complaint alleges that UPS violated Title VII of the Civil Rights Act of 1964 ("Title VII") by discriminating against him on the basis of race. 42 U.S.C. § 2000e–2(a) (1994). Count III alleges a similar violation of Title VII's analogous state statute, the Florida Civil Rights Act of 1992. Fla.Stat.Ann. §§ 760.01–760.853 (West 1997).

Title VII jurisprudence provides that a prima facie case of race discrimination under Title VII is made when a plaintiff demonstrates that "(1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997) (citations omitted). As the Eleventh Circuit has emphasized, "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Id.* (citations omitted).

At this point, the Court may only dismiss Plaintiff's Second Amended Complaint if it finds that Plaintiff could come forward with no set of facts consistent with his allegations to state a claim for relief. Plaintiff's allegations clearly indicate, however, that he may have the ability to provide the Court with facts to support the elements of his prima facie case. He has alleged that he is a

**1304**

member of a protected class, that he suffered adverse employment actions, and that others similarly situated were treated more favorably.

■ Defendants' only argument supporting dismissal of Counts I and III is that "[t]he fatal and pervasive deficiency in [Plaintiff's] Second Amended Complaint is the complete absence of any allegation that he was treated differently because of his race." (Defs.' Mot. To Dismiss at 6.) Plaintiff must, of course, allege that his mistreatment was based on one of Title VII's protected grounds. A review of his Second Amended Complaint, however, clearly reveals that Plaintiff has alleged that he was discriminated against because of his race. Throughout his Second Amended Complaint, Plaintiff continuously asserts that his mistreatment by his employer was motivated by racial bias. (*See* Second Am. Compl. ¶ 7 (stating Plaintiff filed charge with U.S. Equal Employment Opportunity Commission and Florida Commission on Human Relations alleging race discrimination); *id.* ¶ 13 (alleging that Plaintiff "has been subject to racial epithets, racial violence, racially discriminatory actions, and retaliation for opposing race discrimination"); *id.* ¶ 27 (alleging that Torres referred to Plaintiff as "nigger" in Spanish); *id.* ¶ 40 (alleging that "racial epithets and discriminatory treatment" led Plaintiff to file charge of discrimination); *id.* ¶ 46 (alleging that Torres created "racially hostile working environment for blacks"); *see id.* ¶ 62 (alleging ongoing harassment and retaliation for Plaintiff's opposition to race discrimination); *id.* ¶ 64 ("UPS, its agents and employees, engaged in willful discrimination based on race."); *id.* ¶ 71 ("UPS has intentionally discriminated against plaintiff in violation of the Florida Civil Rights Act of 1992's ban on racial discrimination."). In light of these repeated allegations of racial bias, Defendants' argument that Plaintiff does not claim he was mistreated on the basis of his race is simply without merit. Plaintiff has provided allegations, which, if supported, would state a claim for race discrimination under both federal and state law. Thus, the Court will not dismiss Counts I and III.

## B. Plaintiff Has Stated a Claim in Count II

■ Count II of Plaintiff's Second Amended Complaint alleges that Torres and Acquaviva discriminated against Plaintiff in violation of 42 U.S.C. § 1981 (1994). Defendants argue that Plaintiff has not alleged facts indicating that Torres and Acquaviva intentionally discriminated against Plaintiff. To survive a motion to dismiss, however, Plaintiff's Second Amended Complaint need only demonstrate that Plaintiff could come forward with facts to prove that the two individual Defendants intentionally discriminated against him. The Second Amended Complaint meets this standard. Plaintiff alleges that Torres attempted to poison other employees against Plaintiff, and that Torres used racial epithets when referring to Plaintiff. Plaintiff further alleges that Acquaviva intentionally struck Plaintiff on the ankle.

Although Plaintiff may not specifically state in each and every paragraph describing these incidents that they were motivated by racial animus, when read in its entirety, the Complaint clearly attributes all the adverse actions taken against Plaintiff to racial discrimination. Therefore, the allegations that the individual Defendants personally participated in racially motivated acts against Plaintiff are sufficient to withstand Defendants' motion to dismiss.

## C. The Court May Exercise Supplemental Jurisdiction over Plaintiff's State Law Claims

A district court's power to exercise supplemental jurisdiction over related state law claims has been codified by statute. The relevant section provides, in pertinent part:

> Except as provided in subsections (b) and (c) ... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a) (1994). While section 1367(a) thus grants a court the power to

assert supplemental jurisdiction under the appropriate circumstances, subsection (c) grants the court discretion to refuse to do so if, for example, the state claim "raises a novel or complex issue of State law," *id.* § 1367(c)(1), or it "substantially predominates over the claim or claims over which the district court has original jurisdiction," *id.* § 1367(c)(2). *See Lucero v. Trosch,* 121 F.3d 591, 597 (11th Cir.1997) ("The statute reflects a dichotomy between a federal court's power to exercise supplemental jurisdiction, § 1367(a), and its discretion not to exercise such jurisdiction, § 1367(c).").

A determination under section 1367(a) is guided by the factors identified in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), where the Supreme Court outlined the concept of supplemental jurisdiction prior to its codification by Congress. There, the Court stated, "The constitutional 'case or controversy' standard confers supplemental jurisdiction over all state claims which arise out of a common nucleus of operative fact with a substantial federal claim." *Id.* at 724–25, 86 S.Ct. 1130. The Court also directed district courts to consider concerns of judicial economy, convenience, fairness, and comity when exercising its discretion. *Id.* at 726, 86 S.Ct. 1130.

 In the present case, it is clear that Plaintiff has substantial federal claims, against both UPS and the individual Defendants, under Title VII and section 1981. Moreover, the Court finds that Plaintiff's state law claims arise from the same set of facts supporting Plaintiff's federal claims. Plaintiff's battery and assault claims arise from the incident in which Acquaviva purportedly struck Plaintiff from behind on the ankle.[1] In turn, this is one of the principal incidents Plaintiff relies on to demonstrate that he was subject to racial discrimination by UPS and its employees. Because these claims rely on "the identical actions of defendants," the Court easily concludes that the state and federal claims "derive from a common nucleus of operative facts." *Lucero,* 121 F.3d at 598; *see also Palmer v. Hospital Auth.,* 22 F.3d 1559, 1563 (11th Cir.1994) (asserting jurisdiction on ground that "state-

law claims all arise from the same two events as the [federal] claims") Similarly, Plaintiff's state law claim for negligent retention relies on the same allegations supporting his Title VII claim: that UPS knew of its employees' allegedly discriminatory activities but refused to remedy this behavior. Because Plaintiff's state and federal claims form part of the same case or controversy, the Court has the power to assert supplemental jurisdiction under section 1367(a).

 In addition, the Court will not exercise its discretion under section 1367(c) to decline to assert jurisdiction over the state claims. The assault, battery, and negligent retention claims present straightforward issues of state law that are easily, and without prejudice to Defendants, tried before the same jury, and they will not predominate over Plaintiff's substantial federal claims. *See Smith v. K–Mart Corp.,* 899 F.Supp. 503, 506 (E.D.Wash.1995) ("Clearly, negligence is not a novel or complex issue of State law. Neither have Plaintiffs established that their negligence claims substantially predominate over the federal claims."); *Prescott v. Independent Life and Accident Ins. Co.,* 878 F.Supp. 1545, 1553 (M.D.Ala.1995) (exercising supplemental jurisdiction over state law claim for assault and battery because "[t]he court finds it clearly to be in the interest of judicial economy, and without substantial prejudice to either of the defendants, for the claims ... to be tried at the same time").

Defendants rely on several district court decisions from this circuit in support of their argument that the Court should not assert supplemental jurisdiction. The Court finds none to be persuasive. Two of the cases held that the facts supporting the state and federal claims were not sufficiently related to warrant supplemental jurisdiction. For example, in *Roberts v. Lakeview Community Hosp.,* 985 F.Supp. 1351 (M.D.Ala.1997), the court declined to assert supplemental jurisdiction over an assault and battery claim against an individual defendant where the plaintiff's only federal claim was against the corporate defendant. Here, by contrast,

---

1. The Court will not discuss in this section Plaintiff's claim for intentional infliction of emotional distress because, as noted in *infra* Part III.D,

Plaintiff has failed to state a claim for this tort under Florida law.

Plaintiff asserts substantial federal causes of action against both the corporate and individual defendants and relies on the incident in which Acquaviva purportedly struck him as a prime example of the racial discrimination he is claiming violates federal law. Thus, there is no nexus problem as identified by the court in *Roberts*. *See also Caraballo v. South Stevedoring, Inc.*, 932 F.Supp. 1462, 1465 (S.D.Fla.1996) (declining to assert supplemental jurisdiction over nine state law claims, including loss of consortium, because they were not sufficiently related to plaintiffs' federal claims under Americans with Disabilities Act and Age Discrimination in Employment Act).

The other cases Defendants cite decline to assert supplemental jurisdiction because of the presence of complex state law issues. In *Winn v. North Am. Philips Corp.*, 826 F.Supp. 1424 (S.D.Fla.1993), the court declined to assert jurisdiction over plaintiff's seven state law claims, stating at least in five separate passages that the state claims were complex and so nebulous that it was not even clear whether the causes of action existed at all under state law. *Id.* at 1425–26; see also *Betancourt v. Marine Cargo Management, Inc.*, 930 F.Supp. 606, 609 (S.D.Fla.1996) (concluding that "Plaintiff's common law claims would present issues of state law not appropriate for disposition in the same suit as Plaintiff's claims for sexual harassment"). This case, however, presents uncomplicated state law claims that are appropriately tried together with the federal claims.

Moreover, concepts of efficiency and judicial economy, long recognized as central in the inquiry over supplemental jurisdiction, see *Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130, compel the Court to prevent duplicative litigation of Plaintiff's claims in both state and federal forums. These concerns are especially persuasive where there is no indication that Defendants will be prejudiced by trying these claims together, given that state claims for assault and battery and negligence will unlikely confuse a jury. Therefore, the Court will exercise supplemental jurisdiction over Plaintiff's state claims for battery, assault, and negligent retention.

## D. Count VI Fails To State a Claim for Intentional Infliction of Emotional Distress

The Florida Supreme Court has adopted the Restatement (Second) of Torts's standard for evaluating a claim for intentional infliction of emotional distress. *See Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277 (Fla.1985). As the comments to the Restatement explain, "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 278–79 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Courts decide whether the conduct at issue rises to the required degree of outrageousness as a matter of law. *See Vernon v. Medical Management Assocs.*, 912 F.Supp. 1549, 1557 (S.D.Fla.1996) (citing *Dependable Life Ins. Co. v. Harris*, 510 So.2d 985, 988 (Fla.Dist.Ct.App.1987)).

The tort of intentional infliction of emotional distress can undoubtedly arise in the context of employment discrimination. See *id.* at 1558–59. However, this cause of action, sparingly recognized by the Florida courts, may proceed where there is

> the presence of relentless physical, as well as verbal, harassment. It is the element of offensive, non-negligible physical contact that, when coupled with persistent verbal abuse and threats of retaliation, can under some facts and circumstances constitute conduct of sufficient outrageousness to support a claim for intentional infliction of emotional distress.

*Id.* at 1559. In this case, Plaintiff alleges that UPS fabricated a reckless driving charge in an attempt to terminate him; that Torres told a false story about Plaintiff to another employee and referred to Plaintiff as a "nigger" in Spanish; that he did not receive pay and bonuses other drivers received; that he was threatened with termination; that he was unjustifiably suspended and demoted; and that Acquaviva struck Plaintiff from behind on the ankle. While these allegations, if true, constitute objectionable and offensive behavior, they do not rise to the

level of relentless physical and verbal harassment necessary to state a claim for intentional infliction of emotional distress. *See id.* at 1559–60 (citing cases).

## IV. Conclusion

The Court concludes that Plaintiff's Second Amended Complaint states a claim for race discrimination under Title VII and the FRCA because it repeatedly alleges that Plaintiff was subject to adverse actions by UPS because of his race. The Court also finds that Plaintiff has stated a claim against Torres and Acquaviva for intentional race discrimination under section 1981. Because Plaintiff's state law claims for assault, battery, and negligent retention arise from the same set of facts supporting Plaintiff's federal claims, the Court will exercise supplemental jurisdiction over them. The Court will, however, dismiss Plaintiff's Count VI because it fails to state a claim for intentional infliction of emotional distress under Florida law.

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendant's Motion To Dismiss Counts I–V and VII of Plaintiff's Second Amended Complaint be, and the same is hereby, DENIED. Defendants shall answer Plaintiff's Complaint within twenty (20) days of the date of this Order. It is further

ORDERED and ADJUDGED that Defendant's Motion To Dismiss Count VI of Plaintiff's Second Amended Complaint be, and the same is hereby, GRANTED. Count VI of Plaintiff's Second Amended Complaint is hereby DISMISSED.