**Carmen Gabriella SZENDREY–RAMOS, et al, Plaintiffs**

v.

**FIRST BANCORP, et al, Defendants.**

**Civil No. 06–1687(SEC).**

United States District Court,
D. Puerto Rico.

Sept. 29, 2007.

Judith Berkan, Mary Jo Mendez–Vilella, Berkan & Mendez, Ilsa Y. Figueroa–Arus, Figueroa Arus Law Office, San Juan, PR, Zuleika Llovet–Zurinaga, Llovet Zurinaga & Lopez, PSC, Hato Rey, PR, for Plaintiffs.

Graciela J. Belaval–Bruno, Martinez Odell & Calabria, San Juan, PR, Larissa C. Garriga–Cesani, Mark E. Zelek, Morgan, Lewis & Bockius, LLP, Miami, FL, Eric A. Tulla, Rivera Tulla & Ferrer, Hato Rey, PR, Jonathan M. Hoff, Cadwalader, Wickersham & Taft LLP, Joshua R. Weiss, Cadwalader, Wickersham & Taft LLP, Samuel S. Shaulson, Morgan, Lewis & Bockius LLP, New York, NY, for Defendants.

## OPINION AND ORDER

SALVADOR E. CASELLAS, Senior District Judge.

Pending before the Court is Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Docket # 21). Plaintiffs opposed such motion (Docket # 24) and Defendants replied (Docket # 27). For the reasons explained below, the Court declines to exercise supplemental jurisdiction of the pendent state law claims, thus rendering resolution of certain arguments posed in the Motion to Dismiss unnecessary. As to Defendants' request for dismissal of the federal claims, it is **GRANTED in part, DENIED in part.**

### Standard of Review

In assessing whether dismissal for failure to state a claim is appropriate, "the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir.1998) (citations omitted). In judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." *LaChapelle*, 142 F.3d at 508 (*quoting, Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)). *See also, Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.1999). Moreover, "[w]hile plaintiffs are not held to higher pleading standards in § 1983 actions, they must plead enough for a necessary inference to be reasonably drawn." *Marrero–Gutierrez v. Molina*, 491 F.3d 1, 9–10 (1st Cir.2007). Therefore, "even under the liberal pleading standards of Federal Rule of

Civil Procedure 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.' " *Rodríguez–Ortíz v. Margo Caribe, Inc.*, 490 F.3d 92 (1st Cir.2007).

## Background

Because the Court is ruling on a motion to dismiss, we set forth the facts as they are alleged in the Amended Complaint (Docket # 16). Plaintiffs are Carmen Gabriella Szendrey–Ramos (hereinafter Plaintiff or Szendrey) and Rafael Ernesto Bonnin–Suris, Plaintiff's husband (hereinafter Bonnin). Szendrey worked at First Bank until her dismissal in October 2005. At the time of her dismissal, Szendrey was a Senior Vice President and General Counsel for First Bank, as well as Secretary of the Board of Directors of FirstBank Puerto Rico and First BanCorp. Both of these entities are named as Defendants in this action. Also named as Defendants are: Luis Beauchamp, who is the CEO and President of FirstBank Puerto Rico and First BanCorp., and who, at all relevant times, occupied that position or his former post of Senior Executive Vice President of the bank; Richard Reiss, who at the relevant time, was the acting Chairman of the Audit Committee of the Board of Directors of FirstBank Puerto Rico and First BanCorp, and is now the President of the Board of Directors of the State Insurance Fund; and Lawrence Odell, who is currently Executive Vice President and General Counsel of First Bank Puerto Rico and First BanCorp., as well as Secretary of its Board of Directors.

In March 2005, Szendrey received a report from an external law firm that included information about possible ethical and/or legal violations committed by bank officials in relation to the accounting for the bulk purchase of mortgage loans from other financial institutions. Szendrey conducted an investigation into this issue, focusing on the possibility of whether the bank officials' conduct amounted to a violation of law or the bank's Code of Ethics. Upon conclusion of such investigation, Szendrey concluded that there had been irregularities and violations of the Code of Ethics and reported such findings to outside counsel for the bank as well as bank officials. She also divulged her findings to the Board of Directors at a meeting in which she was present.

The Board of Directors delegated to Beauchamp the authority to negotiate the terms of separation of a high level official involved in the irregularities. At this point, it bears noting that Plaintiffs allege that, upon learning of Szendrey's investigation, Beauchamp was hostile to the idea that Szendrey would include, as part of such investigation, the bank's Ethics Code and possible violations thereto.

Szendrey expressed to the bank's management and outside counsel her opinion with regard to the afore-mentioned negotiation, raising ethical and legal concerns. Thereafter, and per Beauchamp's instructions, Szendrey was excluded from participating in the negotiation process. After such exclusion, a separation package for the bank official mentioned in the previous package was authorized, despite the concerns raised by Szendrey.

Some months later, the bank's outside accounting firm once again raised an issue regarding the bulk purchase of mortgage loans. At that point, the Board of Directors decided to review the matter. In furtherance thereof, the Audit Committee of the Board of Directors, of which Reiss was chairman, was to select a person or persons to conduct the review. Reiss selected Odell and his law firm, Martínez, Odell & Calabria, to assist in the review and/or conduct an investigation. This designation was approved by the Audit Com-

mittee and the Board itself. It bears mentioning that Plaintiff alleges that Odell and Reiss have a long standing professional association.

Odell conducted the review, along with a U.S. based law firm which was represented by an attorney named David Meister. Odell informed the Board that he had concluded that Szendrey had incurred in misconduct, however he made no written report of such conclusion. On September 26, 2005, Odell and Meister informed Szendrey that they would recommend to the Board that she be placed on administrative leave. Thereafter, Szendrey appeared before the board by herself and through counsel to defend her position. After such appearances, the bank did not permit Szendrey to resume her duties as General Counsel.

Szendrey was terminated from her employment on October 25, 2006. Beauchamp, who had by that time been named the bank's CEO and President, allegedly played a critical role in the decision to terminate plaintiff, as did Reiss and Odell. Szendrey's position as Secretary of the Board was temporarily filled by an attorney from the firm Martínez, Odell & Calabria. Szendrey's position as General Counsel remained open for some time. By February 2006, however, Odell had been appointed Executive Vice President and General Counsel of FirstBank and First BanCorp and Secretary of the Board.

At the time of her dismissal, Szendrey was offered no severance package. However, several bank officials who had been involved in the irregularities identified by Szendrey in their investigation, and who were separated from the bank in 2005 and 2006, were provided with severance packages or the opportunity to exercise outstanding stock options. Other bank officials in a similar situation remain at the bank.

After Szendrey's termination, the Securities and Exchange Commission (SEC) announced that it was conducting an investigation into certain accounting matters at the bank. In order to deal with such investigation, bank officials placed unwarranted blame on Szendrey. Szendrey was prevented from defending herself from the charges of misconduct by the bank's assertion of the attorney/client privilege. Because of the assertion of such privilege, Szendrey was unable to provide information that would have proved her complete absence of blame. As part of their strategy, bank officials filed with the SEC a Restatement of the Corporation's Financial Statements for the years 2002 through 2004 wherein they allegedly deliberately misrepresented Szendrey's participation and actions with respects to facts contained in the Restatement. Plaintiffs claim that such misrepresentations, along with certain key omissions in the Restatement, were the result of Defendants' attempt to give the false impression that Szendrey had failed in her duties.

Plaintiffs allege that Defendants' actions were taken in retaliation against Szendrey for having pointed out unethical and/or illegal actions by the bank, as she had the ethical obligation to do, in retaliation for Plaintiffs' refusal to accept a payment pursuant to a contract between Bonnin's firm and the State Insurance Fund (of which Reiss is the President of the Board), and in retaliation for Szendrey having filed a complaint before the EEOC and this Court.

At this point we eschew any attempt at a more detailed factual account. Where necessary in the later portions of this Opinion, we will refer to specific factual allegations in the complaint.

### Applicable Law and Analysis

Plaintiffs' complaint includes four causes of action, only three of which need concern

us: for gender discrimination and retaliation, in violation of Title VII and P.R. law; for wrongful discharge under Puerto Rico's Act 80 of May 30, 1976, 29 P.R. Laws Ann. § 185a and violations of the P.R. Constitution, Art. II §§ 1, 8, 16; claims for defamation and tortious interference with contracts under Puerto Rico's Art. 1802 of the Civil Code.[1]

Defendants moved for dismissal of the entire complaint. Their arguments, in short, are the following: (1) dismissal is warranted because in order to prove her claims, Szendrey must breach her duty to maintain the confidentiality of privileged information; (2) Plaintiffs' Title VII claim fails to plead the necessary elements thereof; (3) the Title VII claim against the individual defendants must be dismissed because Title VII does not allow for such a claim; (4) the claims under the P.R. Constitution must be dismissed as barred by the exclusive relief provided by Act 80; (5) the claim under P.R.'s Act 115 must be dismissed because the actions allegedly taken by Defendants were taken after her discharge and thus no actionable retaliation under that law took place; (6) the claims under P.R.'s Act 69, 100, and 115 against the individual defendants fail as a matter of law; (7) Plaintiffs failed to plead all necessary elements of the tortious interference claim, thus requiring its dismissal; (8) Co-plaintiff Bonnin's claims must be dismissed for failure to plead a federal claim; and (9) in any event, if the Court dismisses the Title VII claim, the remaining claims, which are all supplemental, should also be dismissed.

Upon careful consideration of the issues presented by this case, and the law governing such issues, we decline to exercise supplemental jurisdiction over the P.R. law claims. Accordingly, these claims will be dismissed without prejudice, and Defendants' arguments for dismissal on the merits of such claims are thus moot. As for the Title VII discrimination and retaliation claims, they survive the motion to dismiss. This case thus goes forward solely under Title VII. We explain our reasoning below.

## I. Supplemental Jurisdiction

28 U.S.C.A. § 1367, in part provides:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

This statute codifies the principles of pendent and ancillary jurisdiction set forth by the Supreme Court, to wit, that a "federal court's original jurisdiction over federal questions carries with it jurisdiction over state law claims that 'derive from a common nucleus of operative fact,' such that 'the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional case.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164–165, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (*quoting, Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

Supplemental jurisdiction, however, is subject to exceptions, also codified at § 1367:

---

1. The fourth cause of action is a direct action against the insurers.

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

In including these exceptions, Congress was also recognizing long-standing Supreme Court precedent that "pendent jurisdiction 'is a doctrine of discretion not of plaintiff's right,' and that district courts can decline to exercise jurisdiction over pendent claims for a number of valid reasons." *City of Chicago*, 522 U.S. at 172, 118 S.Ct. 523 (*quoting, Gibbs*, 383 U.S. at 726–727, 86 S.Ct. 1130). The Supreme Court, in *City of Chicago*, explained that:

Depending on a host of factors, then— including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims—district courts may decline to exercise jurisdiction over supplemental state law claims. The statute thereby reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity."

*Id.* at 173, 118 S.Ct. 523 (*quoting, Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)).

The Court finds that two of § 1367(c)'s subsections are at issue here: (1) that the state law claims raise complex or novel issues and (2) that the state-law claims substantially predominate over the federal claim. We start with the latter and work our way back to the former.

■ Plaintiffs' complaint includes two lonesome claims under Title VII, for discrimination and retaliation thereunder. The remaining claims all arise out of P.R. law: Act 100, 29 P.R. Laws Ann. § 146 *et seq.* (for gender discrimination); Act 115, 29 P.R. Laws Ann. § 194 *et sew.* (for retaliation); Act 80, 29 P.R. Laws Ann. § 185a *et seq.* (for wrongful discharge); §§ 1, 8 and 16 of the P.R. Constitution (for violations to Plaintiffs' dignity, honor, and personal integrity); and under Art. 1802 of the P.R. Civil Code, 31 P.R. Laws Ann. § 5141 (both for tortious interference with contracts and for defamation). Not only do the P.R. law claims far outnumber the federal claims, but their scope also exceeds that of the federal claims. On that point we note that although some of the P.R. law claims mimic the federal claims (*i.e.,* the Act 100 and Act 115 claims), the remaining P.R. law claims (wrongful discharge, tortious actions infringing Plaintiff's constitutional rights, tortious interference with contracts, and defamation) are distinct and each has its own elements of proof; proof that is not necessary to establish the Title VII claims. That the state-law claims predominate over the federal claims is, in and of itself, reason enough to decline to exercise supplemental jurisdiction. *See, Diven v. Amalgamated Transit Union Intern. and Local*, 38 F.3d 598, 602 (C.A.D.C.1994) (relative weakness of federal claim and primacy of subtle state law claims supported district court's refusal to exercise supplemental jurisdiction); *Caraballo v. South Stevedoring, Inc.*, 932 F.Supp. 1462 (S.D.Fla.1996) (refusing to exercise jurisdiction over supplemental claims where fully half of plaintiff's claims were common

law claims that could present issues of state law not appropriate for disposition in the same suit as the plaintiff's federal employment discrimination suit); *James v. Sun Glass Hut of California, Inc.*, 799 F.Supp. 1083, 1085 (D.Colo.1992) (declining to exercise supplemental jurisdiction, if any, over state law claims because they clearly predominated over the lone federal claim and would substantially expand the scope of the case); *Bostic v. AT & T of Virgin Islands*, 166 F.Supp.2d 350, 364 (D.Vi., 2001) (declining to exercise supplemental jurisdiction, noting *inter alia* that "[a]t a trial on the merits, the vast majority of evidence in this case would pertain solely to the [state] claims"); *Betancourt v. Marine Cargo Mgmt., Inc.*, 930 F.Supp. 606 (S.D.Fla.1996) (declining to exercise supplemental jurisdiction over state law claims because they were not appropriate for disposition in the same suit as the plaintiff's federal sexual harassment claim, would engender confusion for a jury, and would predominate over the federal employment claim.).

█ Moreover, we note that the P.R. law claims require a much fuller incursion into the performance of Szendrey as General Counsel and any shortcomings she may have had as such. This, in turn, leads us to the other reason for declining to exercise supplemental jurisdiction: the presence of complex or novel issues of state law. The main issue raised by Defendants in their motion to dismiss, that Plaintiffs' prosecution of their claims would run afoul of Canon 21 of the Puerto Rico Code of Professional Ethics, 4 P.R. Laws Ann. Ap. IX C. 21, is at its apex in the P.R. law claims. For example, in order to prove that Defendants defamed her, Szendrey would have to establish that what was said about her (*i.e.*, that she participated in wrongful acts) was false. In order to prove such falsity, Szendrey would have to

reveal the extent of her participation regarding such wrongful acts, including what information she became aware of as General Counsel, what actions she took after learning such information, and what advice she offered her client with regards to such information.

Canon 21 undisputably belongs to an exclusively Puerto Rican body of law, and one that deals with the highly sensitive matter of lawyers' conduct, and its relation to society's interest in a fully functioning legal system. *See*, 4 P.R. Laws Ann. Ap. IX, Art. 1. The interpretation of the canons is normally the province of the Puerto Rico Supreme Court, which is entrusted with the regulation and supervision of the legal profession. *See, In re Godinez Morales*, 2004 TSPR 17, 2004 WL 324471, at *3 (P.R. Feb. 3, 2004) (the authority to regulate the legal profession in Puerto Rico belongs exclusively to the P.R. Supreme Court as part of its inherent powers). We note, moreover, that Canon 21 is decidedly different to the corresponding Model Rule of the American Bar Association. Unlike this Court and several U.S. jurisdictions, Puerto Rico has not adopted the latest version of the American Bar Association's Model Rules.

Canon 21 is decidedly silent on the issue of a lawyer's claim—whether in-house or not—against his former client, and the possibility of divulging confidential information in order to pursue such a claim. While the parties have pointed us to decisions by several courts ruling one way or the other as to the viability of those claims, it is important to underscore that such decisions are based on the ethical provisions that governed the attorney claimants in those cases. Helpful though those decisions may be to understand the viability of a claim by an attorney against a former client when that attorney is bound by the New York Code of Ethics or by the ABA

Model Rules, they do not conclusively establish whether a Puerto Rican attorney, bound by the P.R. Code of Ethics, may bring suit against his former client when such a suit would entail the disclosure of information subject to the attorney-client privilege. This is an issue of Puerto Rico law that has yet to be addressed by the Puerto Rico courts and which is imbued with important considerations of public policy. This is particularly so as to Szendrey's constitutional claims; even if Canon 21 were, *for example,* held to bar an Act 80 claim, there would still be a question of whether an attorney's action to redress the violation of her constitutional rights must succumb under the heavy duty of silence imposed by Canon 21. Considerations of comity counsel against the Court assuming jurisdiction over such delicate and as of yet unresolved Puerto Rico law issues. *See, Valencia ex rel. Franco v. Lee,* 316 F.3d 299 (2nd Cir.2003) ("Where a pendent state claim turns on novel or unresolved questions of state law, especially where those questions concern the state's interest in the administration of its government, principles of federalism and comity may dictate that these questions be left for decision by the state courts."); *Villas of Lake Jackson, Ltd. v. Leon County,* 906 F.Supp. 1509, 1522 (N.D.Fla.1995) ("The novelty of the state claim, which gives rise to issues of comity, and whether a state forum is available to adjudicate the Plaintiff's claim, are important considerations in the exercise of this discretion [discretion not to exercise supplemental jurisdiction]"); *Bostic,* 166 F.Supp.2d at 365 (noting there were unsettled issues of law and that it would be preferable for the state courts to address them in the first instance).

Because the Puerto Rico law claims substantially predominate over the federal claims in this case, and because they posit novel and complex issues of state law, the Court declines to exercise supplemental jurisdiction. Accordingly, the Puerto Rico law claims will be **dismissed without prejudice,** so that Plaintiffs may re-file them in the Puerto Rico courts.

## II. Title VII

■ Accordingly, we only have before us Defendants' arguments for dismissal of the Title VII claims. Briefly stated, other than dismissal as to the individual defendants, dismissal of the claims under Title VII is not warranted at this point.

Under the applicable standard for motions to dismiss, Plaintiffs have pled enough for a Title VII cause of action: Szendrey claims that she suffered an adverse employment action, to wit, termination, and that such action was motivated by discriminatory animus based on gender. In furtherance of that allegation, Plaintiffs aver certain facts that support her claim. This does not mean that these are the only facts that support Szendrey's Title VII claim; as Plaintiffs correctly posit, Szendrey was not required to set out in her complaint each and every fact that supports her claim. Requiring more of Plaintiffs would subvert the motion to dismiss standard. There is also the issue of the Title VII retaliation claim, as to which there is not much argument in the motion to dismiss. Accordingly, we eschew further comments on this point.

■ As for the Title VII claims against the individual defendants, we agree that Title VII does not stand for individual liability thereunder. *See,* among others, *Maldonado–Cordero v. AT & T,* 73 F.Supp.2d 177, 184 (D.P.R.1999), *Acevedo Vargas v. Colón,* 2 F.Supp.2d 203, 206 (D.P.R.1996). Accordingly, the Title VII claims against the individual defendants must be **DISMISSED WITH PREJUDICE.**

That leaves only Defendants' argument as to the viability of a Title VII claim in the face of the possible divulgation of attorney-client privilege. The Court's response to that is that, at this point, it is unnecessary to reach that issue. The extent, if any, of discovery and filings regarding attorney-client privilege with regards to the Title VII cause of action is speculative. Any practical problems posed by this point may be addressed via protective orders, requests for filing under seal, and any other mechanism designed to protect the confidentiality of information that may legitimately be deemed as such.

## Conclusion

For the reasons explained above, the Court declines to exercise supplemental jurisdiction. Thus, the Puerto Rico law claims will be **DISMISSED WITHOUT PREJUDICE.** The Title VII claims against the individual defendants will be **DISMISSED WITH PREJUDICE.** Pending remain the Title VII claims against the corporate defendants.

**SO ORDERED.**