**Kareemah AMIRA–JABBAR, Plaintiff**

v.

**TRAVEL SERVICES, INC., et. al, Defendants.**

**Civil No. 08–2408 (JA).**

United States District Court, D. Puerto Rico.

July 28, 2010.

Opinion Denying Motion to Amend Sept. 10, 2010.

17. We amend our judgment in the civil case pursuant to Federal Rule of Civil Procedure 60(b)(6).

78

Luis F. Del Valle–Emmanuelli, Del Valle–Emmanuelli Law Offices, Carolina, PR, for Plaintiff.

Carl E. Schuster, Lourdes C. Hernandez–Venegas, Schuster & Aguilo LLP, San Juan, PR, for Defendants.

## OPINION AND ORDER

JUSTO ARENAS, United States Chief Magistrate Judge.

This matter is before the court on motion for summary judgment filed by the

defendants, Travel Services, Inc., Joanne Ferguson, John Ross, Miguel Hernández–Roses and Gilbert Anthony Linares, on April 29, 2010. (Docket No. 22.) The defendants' motion was opposed by plaintiff, Kareemah Amira–Jabbar, on May 11, 2010. (Docket No. 31.) For the reasons set forth below, the motion for summary judgment is hereby GRANTED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 5, 2006, plaintiff, a black woman, was hired as an assistant group service manager by Travel Services, Inc. ("TSI").[1] (Docket No. 1, at 7, ¶ 34 & Docket No. 21, at 19–20, ¶¶ 1 & 7.) The offer letter from TSI, which plaintiff signed, included a non-compete clause that barred her from taking employment with any direct competitor of TSI for a period of one year after terminating her employment with TSI. (Docket No. 47–3.) As a manager, plaintiff earned a yearly salary of $27,000. (Docket No. 21, at 20, ¶ 7.) After the probation period was completed, plaintiff's salary was raised to $32,500. (Id.¶ 11.) Plaintiff's duties as an assistant group service manager included following out orders prescribed by the sales, with different contracts through vendors and companies from the United States and all over, to handle their transportation, tours and other needs, problems or situations that could arise. (Id.¶ 8.) Plaintiff alleges that during her employment at TSI she was harassed and discriminated against because of her color. (Docket No. 1, at 8, ¶ 36.) According to plaintiff, during a Christmas gift-exchange activity held by TSI in December 2006, Mr. Ross made a derogatory comment to her regarding her race. (Docket No. 1, at 8, ¶ 39 & Docket No. 31–3, at 2.) Plaintiff, who speaks En-

glish, claims that Mr. Ross's comment was made in Spanish. (Docket No. 1, at 9, ¶ 44.) Also, plaintiff claims that the comment made by Mr. Ross was made with the intention of diminishing and insulting her because of her color. (Id. at 9–10, ¶ 49.)

In September 2007, TSI approved a golf outing in Dorado. (Docket No. 31–3, at 4–5.) Some of TSI's employees, including plaintiff and Mr. Hernández, attended the outing. (Id.) After the event, Marilyn Hernández, an employee of TSI, uploaded pictures of the outing on Facebook, a social networking website. (Id.) One of the pictures uploaded was of plaintiff, Mr. Hernández and other TSI employees. (Docket No. 31–5.) On the comments section of the website, plaintiff wrote the following: "... remind me that taking pictures in the shade is really a dis-service to my wonderful chocolate skin." (Id.) Mr. Hernández responded to plaintiff's comment by writing the following: "That is why you always have to smile!!!!" (Id.) Plaintiff claims that Mr. Hernández' comment was racist. (Docket No. 1, at 10, ¶ 56.)

On December 1, 2007, several employees of TSI decided to personalize candy canes to put them as reindeer ornaments in the company's Christmas tree. (Docket No. 31–3, at 8.) Plaintiff personalized her candy cane by putting thumb tacks that resembled hair rollers on it. (Id. & Docket No. 31–4.) Like plaintiff other employees personalized candy canes to resemble themselves. (Docket No. 11, at 8, ¶ 73.) For instance, a very tall female employee included a figurine that was larger than the others. (Id.) Another female employee who is very short included a figurine that was much smaller than the others, while

---

1. TSI is a duly organized corporation, created and/or authorized to do business within the Commonwealth of Puerto Rico. (Docket No. 1, at 2, ¶ 3.)

another female employee with curly hair curled up her figurine's antlers. (Id.) Plaintiff alleges that when she arrived at the TSI office she noticed that someone had painted her candy cane black and placed it at the top of the Christmas tree. (Docket No. 1, at 12, ¶¶ 67–68.) According to plaintiff, some of her co-workers were next to the Christmas tree commenting and laughing about the situation. (Id. ¶ 69.) Plaintiff complained to TSI about the incident and an investigation was conducted. (Docket No. 31–4 & Docket No. 1, at 13, ¶ 74.) Besides the candy cane incident, TSI investigated the incident that allegedly took place during the Christmas gift-exchange as well as the Facebook incident. (Docket No. 31–6, at 2 & 11.) The investigation did not reveal who was the person responsible for painting plaintiff's candy cane black. (Id. at 20.) TSI, nevertheless, admitted that the candy cane incident was offensive. (Id.) As a preventive measure TSI informed plaintiff that it was going to review its harassment policy with all of its employees. (Docket No. 31–8.) On December 10, 2007, plaintiff resigned from TSI. (Docket No. 1, at 15, ¶ 88.) On that same date, plaintiff filed a claim before the Anti–Discrimination Unit ("ADU") against TSI alleging race discrimination. (Docket No. 47–5.) On May 14, 2008, plaintiff requested a Notice of Right to Sue in connection with the December 10, 2007 ADU charge. (Docket No. 47–11.) The Right to Sue Letter, however, was not issued by the Equal Employment Opportunity Commission ("EEOC") until September 30, 2008. (Docket No. 52–1, at 5–7.)

On or around October, 2008, TSI was retained to run a hospitality desk at the Grand Meliá Hotel in Río Grande, Puerto Rico, to provide sightseeing tours and transportation. (Docket No. 47–6, at 2–4.) On October 12, 2008, Trillis Pendelton who was a TSI contractor retained to man the Grand Meliá hospitality desk sent a written communication to Mrs. Ferguson complaining about some incidents allegedly involving plaintiff, who at the time was working for Dragonfly, a competitor of TSI. A follow up email was also sent by Mrs. Pendelton on October 13, 2008. (Docket No. 47–7, 47–8, at 2–6, ¶ 8; 47–6, at 3–5.) On October 24, 2008, Mrs. Ferguson contacted Yolanda Díaz by email to notify her that at the beginning of her employment with TSI, plaintiff had signed a non-compete agreement. (Docket No. 47–10.)

On December 24, 2008, plaintiff filed a complaint against TSI, Mrs. Ferguson,[2] Mr. Ross,[3] Mr. Hernández[4] and Mr. Linares.[5] (Docket No. 1.) In essence, she alleges that the defendants discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1991, 42 U.S.C. § 1981a et seq. (Id. at 4, ¶ 25.) Plaintiff's complaint also includes various claims under the laws of Puerto Rico. (Id. at 7, ¶ 33.)

On April 29, 2010, the defendants filed their motion for summary judgment, statement of uncontested facts and supporting memorandum of law. (Docket Nos. 22, 23 & 24.) The defendants argue that plaintiff's hostile work environment claim and

---

**2.** Mrs. Ferguson was the executive vice-president and president of TSI. She was also co-owner and stockholder of TSI as well as plaintiff's direct supervisor. (Docket No. 1, at 2, ¶¶ 5–7.)

**3.** Mr. Ross was the operations manager of TSI. (Id. at 3, ¶ 11.)

**4.** Mr. Hernández worked at TSI in the operations area. (Id. ¶ 15.)

**5.** Mr. Linares was TSI's business manager. (Id. ¶ 19.)

constructive discharge claim have to be dismissed because they are not supported by the allegations contained in the complaint. (Docket No. 24, at 15.) According to the defendants, plaintiff never experienced any discriminatory comments or actions while she worked for TSI. (Id. at 13.) They claim that TSI cannot be held responsible for the Facebook incident because the account did not belong to TSI and therefore TSI had no control over it. (Id. at 4 & 14.) According to the defendants, Mr. Hernández who allegedly was the one who wrote, had no authority to act on behalf of TSI via the Facebook account. (Id. at 8.) As to the discriminatory comment that Mr. Ross allegedly made and the candy cane incident, the defendants argue that Mr. Linares investigated both matters after plaintiff filed a complaint with Mrs. Ferguson. (Id. at 6 & 14.) In particular with respect to the candy cane incident the defendants claim that as part of the investigation Mr. Linares sent emails to every employee in TSI, who could have been implicated in the case, requesting an immediate interview with them. (Id. at 6.) Also, the defendants claim that Mr. Linares reviewed TSI's policy on sexual harassment with Mr. Ross, Mr. Héctor Pérez and Mr. Hernández as well as the EEOC's compliance manual. (Id. at 7.) With regards to the comment made my Mr. Ross, the defendants claim that Mr. Linares interviewed both Mr. Ross and plaintiff. (Id.) According to the defendants, plaintiff told Mr. Linares that she was unsure what Mr. Ross had said to her because the comment was made in Spanish. (Id.) As to Mr. Ross, the defendants claim the he denied making any discriminatory comment to plaintiff. (Id. at 14.) The defendants also claim that besides plaintiff and Mr. Ross, Ms. Olga Jiménez, Mr. Hernández, Mr. Pérez and Ms. Melissa Puello, who where all at the office when the alleged incident took place, were interviewed by Mr. Linares. (Id. at 8.) The defendants claim that after concluding the interviews, Mr. Linares found that there was no pattern of discrimination. (Id.) The defendants further argue that contrary to what plaintiff claims, she was not the only black employee at TSI. (Id. at 14–15.) They claim that Sharely Alamo Pagán, a black Puerto Rican woman, was also a fellow employee at TSI. (Id. at 15.) Finally, the defendants argue that plaintiff was not constructively discharged. (Id. at 2.) They claim that plaintiff resigned voluntarily after being informed of the results of the investigation conducted by Mr. Linares. (Id. at 5.)

On May 11, 2010, plaintiff opposed the defendants' motion for summary judgment. (Docket No. 31.) She contends that there are genuine issues of material facts with respect to whether she was subjected to racially discriminatory intimidation, ridicule and insult that altered the conditions of her employment at TSI and created an abusive hostile working environment for her, resulting in her constructive discharge. (Id. at 1.) She also claims that there are issues of material fact as to whether TSI established effective racial harassment policies and grievance procedures, and whether their implementation was reasonable. (Id.) Plaintiff argues that TSI is liable for Mrs. Hernández' Facebook comment because it allowed its employees to post photos and comments on the website during company time for company purposes. (Docket No. 31, at 7 & 10.) She claims that TSI did not have a firewall or a software in place to prevent employees from accessing Facebook during company hours. (Id. at 10.) Plaintiff also claims that Mrs. Ferguson was present when Mr. Ross made the discriminatory remark but that she did not do anything to investigate or discipline him. (Id. at 2.) According to plaintiff, it was common for

Mr. Ross to make racial jokes at work about people from other ethnic groups, and that TSI knew about it. (Id. at 7.) Plaintiff claims that TSI's inaction shows that it was willing to tolerate and condone racially discriminatory conduct, and permit a hostile work environment. (Id. at 2.) With regard to the candy cane incident, plaintiff claims that she felt racially targeted. (Id. at 2–3.) She argues that TSI's investigation was deficient and demonstrative that its harassment policies and grievance procedures were ineffective because it failed to interview all of the witnesses and because it failed to identify and sanction the persons responsible for the incidents. (Id. at 8 & 11.)

On June 18, 2010, the defendants filed a supplementary memorandum of law in support of their motion for summary judgment. (Docket No. 48.) The defendants essentially argue that plaintiff failed to prove that she was the victim of retaliation. (Id. at 2.) The defendants' motion was opposed by plaintiff on July 9, 2010. (Docket No. 52.) Contrary to what the defendants claim, plaintiff argues that the retaliation claim cannot be dismissed because there are material issues of fact in controversy. (Id. at 1–2.) The defendants replied to plaintiff's opposition on July 23, 2010. (Docket No. 54.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). The intention of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct.

1348, 89 L.Ed.2d 538 (1986) (quoting Fed. R.Civ.P. 56(e)). "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which [it] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [its] favor." *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000) (quoting *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997)).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Carroll v. Xerox Corp.*, 294 F.3d 231, 236–37 (1st Cir.2002) (quoting *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir.1996)) (" '[N]either conclusory allegations [nor] improbable inferences' are sufficient to defeat summary judgment."). The nonmoving party must produce "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)); *see also López–Carrasquillo v. Rubianes*, 230 F.3d 409, 413 (1st Cir.2000).

"A genuine issue exists when there is evidence sufficient to support rational resolution of the point in favor of either party." *Nereida–González v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir.1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505; *United States v. One Parcel of Real Prop.*, 960 F.2d 200, 204 (1st Cir.1992)). "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving

party...." *Burke v. Town of Walpole,* 405 F.3d 66, 75 (1st Cir.2005) (quoting *United States v. One Parcel of Real Prop.,* 960 F.2d at 204).

Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, a moving party "may move for summary judgment 'with or without supporting affidavits.'" *Id.* at 323, 106 S.Ct. 2548 (quoting Rules 56(a) and (b)). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); *see also Patterson v. Patterson,* 306 F.3d 1156, 1157 (1st Cir. 2002) (quoting *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990)) ("[the court] must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.").

## III. ANALYSIS

### A. Title VII Hostile Work Environment Claim

■ To establish a *prima facie* case for hostile work environment, a plaintiff must show that: "(1) he [or she] is a member of a protected class; (2) he [or she] experienced uninvited harassment; (3) the harassment was racially-based; (4) the harassment was so severe or pervasive as to create an abusive work environment; ... (5) the harassment was objectively and subjectively offensive[,]" and (6) that some basis for employer liability exists. *Prescott v. Higgins,* 538 F.3d 32, 42 (1st Cir.2008)

(citing *Douglas v. J.C. Penney Co.,* 474 F.3d 10, 15 (1st Cir.2007)); *see also Navarro v. U.S. Tsubaki, Inc.,* 577 F.Supp.2d 487, 509 (D.Mass.2008). "[W]hen assessing whether a workplace is a hostile environment, this Court must 'look to the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interferes with the employee's work performance.'" *Matias–Cardona v. Verizon Wireless P.R., Inc.,* 610 F.Supp.2d 157, 170 (D.P.R.2009) (quoting *Rivera–Rodríguez v. Frito Lay Snacks Caribbean,* 265 F.3d 15, 24 (1st Cir.2001)). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not create a hostile work environment." *Mojica v. El Conquistador Resort & Golden Door Spa,* 714 F.Supp.2d 241, 260, 2010 WL 1992575, at *15 (D.P.R.2010) (citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)); *see also Crespo–Vargas v. U.S. Gov't,* 573 F.Supp.2d 532, 551–52 (D.P.R.2008). Simply put, "[t]he work place is not a cocoon, and those who labor in it are expected to have reasonably thick skins." *Rosario v. Dep't of Army,* 607 F.3d 241, 247 (1st Cir.2010) (quoting *Marrero v. Goya of P.R., Inc.,* 304 F.3d 7, 19 (1st Cir.2002)).

The defendants argue that plaintiff cannot establish elements four, five and six of her *prima facie* case. The defendants are correct. First, only three incidents allegedly occurred between September 5, 2006 and December 10, 2007. The first incident occurred in December 2006, in which Mr. Ross allegedly mad a discriminatory comment to plaintiff. Nine months later in September 2007, the Facebook incident took place and three months later in December, 2007 the candy cane incident oc-

curred. While it cannot be denied that the comments allegedly made to plaintiff were offensive, they are nevertheless "offhand comments" or "isolated incidents" that are insufficient to create an abusive environment. *See Thompson v. Coca Cola Co.*, 497 F.Supp.2d 80, 92 (D.Mass.2007) (employee failed to establish *prima facie* case of racially hostile work environment through evidence of three comments over one and a half year period). Furthermore, viewing the record in the light most favorable to plaintiff and drawing all inferences in her favor, the court cannot find that the defendants' conduct was physically threatening nor that it interfered with her work performance. Second, although plaintiff complained to Mrs. Ferguson about some of the incidents indicating that she felt racially targeted and humiliated, the defendants' conduct was neither objectively nor subjectively offensive so as to establish a hostile work environment. *See Bibiloni Del Valle v. Puerto Rico*, 661 F.Supp.2d 155, 172 (D.P.R.2009) (citing *De La Vega v. San Juan Star, Inc.*, 377 F.3d 111, 118 (1st Cir.2004)). Third, TSI can not be held accountable for the actions of plaintiff's co-workers. For TSI to be liable, plaintiff needed to show it " 'knew or should have known of the . . . harassment and failed to implement prompt and appropriate action[,]' " however she did not. *Forrest v. Brinker Int'l Payroll Co.*, 511 F.3d 225, 230 (1st Cir.2007) (quoting *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 401 (1st Cir. 2002)). Plaintiff does not question that TSI did not know or should have known about the harassment. Instead she argues that the investigation was deficient because not all of the witnesses were interviewed and because the people responsible for the incidents were neither identified nor disciplined. Plaintiff is mistaken.

TSI's remedial actions in this case satisfy the "prompt and appropriate" standard. Although the First Circuit has not set a bright line rule for what constitutes "prompt and appropriate action," it has noted that "[a] reasonable jury could find that an employer response was not prompt and appropriate without being so indifferent as to indicate an attitude of permissiveness amounting to discrimination." *Forrest v. Brinker Intern. Payroll Co.*, 511 F.3d at 231 n. 8. "Examples of responses that have been deemed appropriate 'have often included prompt investigation of the allegations, proactive solicitations of complaints, scheduling changes or transfers, oral or written warnings, reprimands, and warnings that future misconduct could result in progressive discipline.' " *Wilson v. Moulison N. Corp.*, 691 F.Supp.2d 232, 238 (D.Me.2010) (quoting *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 675 (10th Cir. 1998)). The record in this case shows that plaintiff's concerns were addressed in a timely fashion in order to prevent any possible harassment. As soon as plaintiff notified Mrs. Ferguson about the candy cane incident, she immediately ordered Mr. Linares to conduct an investigation. (Docket No. 24–2, at 12.) Plaintiff made the complaint on December 1, 2007, the investigation was commenced on December 2, 2007 and on December 5, 2007 it was completed. (Id.) Also, it is important to point out that the investigation conducted by Mr. Linares on behalf of TSI was not centered solely on the candy cane incident. (Id. at 14.) As part of his investigation, Mr. Linares looked into the other two incidents that allegedly had taken place after they were brought to TSI's attention by plaintiff. (Id.) The investigation consisted mostly of interviews to TSI employees including those identified by plaintiff as responsible for the incidents. (Id. at 12.) Also, TSI granted plaintiff's request for leave of absence until the investigation was concluded. (Id.) Furthermore, even though the investigation did not reveal

who was the person responsible for the candy cane incident, TSI reviewed its harassment policy with all of its employees including Mr. Pérez, Mr. Ross and Mr. Hernández. (Id. at 11.) With regard to the incident involving Mr. Ross, TSI did not reprimand him because Mrs. Jabbar was not able to say specifically what was the comment that he allegedly had made to her. (Id. at 14.) The comment according to plaintiff was made in Spanish. (Id.) She only told Mr. Linares that she believed that Mr. Ross's comment was racial in nature. (Id.) As to the Facebook incident, TSI asked its IT contractor to block access to the website for all office computers. (Id.) Having considered the facts of this case in the light most favorable to plaintiff, the court finds that the defendants responded promptly and appropriately to the December 1, 2007 complaint. Plaintiff has failed to establish a trial worthy issue as to whether there is employer liability for the hostile work environment created by TSI. Accordingly, plaintiff's Title VII hostile work environment claim must be dismissed with prejudice.[6]

**B. Title VII Constructive Discharge Claim**

■■■■ "Constructive discharge that results from . . . a hostile work environment is actionable under Title VII." *Acosta v. Harbor Holdings & Operations, Inc.,* 674 F.Supp.2d 351, 362 (D.P.R.2009) (citing *Pa. State Police v. Suders,* 542 U.S. 129, 143, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004)). "In order to establish a claim based on constructive discharge 'plaintiff must prove that his employer imposed working conditions so intolerable that a reasonable person would feel compelled to

forsake his job rather than to submit to looming indignities.' " *Acosta v. Harbor Holdings & Operations, Inc.,* 674 F.Supp.2d at 361–63 (quoting *Landrau–Romero v. Banco Popular De P.R.,* 212 F.3d 607, 613 (1st Cir.2000)). The standard for assessing a constructive discharge claim "is an objective one; it 'cannot be triggered solely by an employee's subjective beliefs, no matter how sincerely held.' " *Román v. Potter,* 604 F.3d 34, 42 (1st Cir.2010) (quoting *Marrero v. Goya of P.R., Inc.,* 304 F.3d at 28). Thus, that a plaintiff was subjected to the "ordinary slings and arrows that workers routinely encounter in a hard, cold world" is insufficient to state a claim for constructive discharge. *De La Vega v. San Juan Star, Inc.,* 377 F.3d at 117 (quoting *Lee–Crespo v. Schering–Plough Del Caribe Inc.,* 354 F.3d 34, 45 (1st Cir.2003) (quoting *Suárez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 54 (1st Cir.2000))). Because plaintiff failed to establish a *prima facie* case for her hostile work environment claim, the court needs not address her constructive discharge claim. *See Acosta v. Harbor Holdings & Operations, Inc.,* 674 F.Supp.2d at 362 (quoting *Pa. State Police v. Suders,* 542 U.S. at 149, 124 S.Ct. 2342); *Dykstra v. First Student, Inc.,* 324 F.Supp.2d 54, 68 (D.Me.2004) (holding that a failure to make out a hostile work environment claim effectively disposes of the constructive discharge claim as well). Therefore, the court finds that plaintiff's constructive discharge claim must be dismissed with prejudice.

**C. Title VII Retaliation Claim**

Because plaintiff did not present direct evidence in support of her retaliation claim

---

**6.** Since plaintiff's failed to establish a *prima facie* case for hostile work environment, the court will not address the parties arguments regarding the application of the *Faragher–Ellerth* defense. (Docket No. 45, at 7–9 & Docket No. 52, at 5–7). *See Chaloult v. Inter-* state *Brands Corp.,* 540 F.3d 64, 66 (1st Cir. 2008) (citing *Faragher v. City of Boca Raton,* 524 U.S. at 807, 118 S.Ct. 2275; *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).

the court must apply the *McDonnell Douglas* burden shifting scheme. *Lockridge v. Univ. of Me. Sys.*, 597 F.3d 464, 472 (1st Cir.2010) (citing *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 25–26 (1st Cir.2004)); see *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this scheme, a plaintiff establishes a *prima facie* case for retaliation by showing "that: (1) she engaged in [a] protected activity; (2) she suffered some materially adverse action; and (3) the adverse action was causally linked to her protected activity." *Agusty–Reyes v. Dep't of Educ. of P.R.*, 601 F.3d 45, 56–57 (1st Cir.2010) (quoting *Dixon v. Int'l Bhd. of Police Officers*, 504 F.3d 73, 81 (1st Cir.2007)). "Once a plaintiff makes out a *prima facie* case of retaliation, the burden shifts to the defendant ... to 'articulate a legitimate, non-retaliatory reason for [its] employment decision.'" *Román v. Potter*, 604 F.3d at 39 (quoting *Enica v. Principi*, 544 F.3d 328, 343 (1st Cir.2008)). "If the defendant meets this burden, the plaintiff must now show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." *Valentín–Almeyda v. Municipality of Aguadilla*, 447 F.3d 85, 94–95 (1st Cir.2006) (quoting *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d at 26).

Plaintiff claims that the defendants retaliated against her after she filed a charge for discrimination before the ADU and EEOC. (Docket No. 52.) According to plaintiff the complaint made by Mrs. Pendelton was addressed by Mrs. Ferguson to Dragonfly as well as to Hendrick Santos, Felipe Cervantes and Jose Ferreras, all members of management at the Gran Meliá Hotel. (Id. at 1.) The complaint according to plaintiff was filled with false and defamatory statements. (Id.) Additionally plaintiff claims that she was informed by Dragonfly that TSI had contacted them claiming that she could not work with them as per an agreement not to compete. (Id. at 1 & 2.) Plaintiff claims that as a result of TSI's action she was terminated from her employment. (Id.) According to plaintiff, a reasonable jury could infer from the chronological sequence of events that there was a retaliatory animus behind TSI's actions. (Id. at 4–5.)

The defendants concede that the filing of the ADU charge is a protected activity under Title VII for purposes of establishing the first prong of plaintiff's *prima facie* case. (Docket No. 48, at 6.) The defendants, however, do not admit that plaintiff suffered an adverse employment action and therefore argue that she cannot establish any causal connection with the protected activity. (Id.) The defendants also contend that there is no temporal proximity between plaintiff's protected activity and the actions she alleges are retaliatory. (Id.) The defendants also believe that even if it is assumed that plaintiff is able to establish a *prima facie* case, defendants have legitimate, non-discriminatory reasons for their actions. (Id. at 7.) According to the defendants, Mrs. Pendelton made the complaint because plaintiff allegedly was trying to take away TSI's business by telling clients that Dragonfly was the only one authorized to provide its services at the Gran Meliá. (Id.) The defendants contend that they contacted Dragonfly after they learned of the complaint and after finding out that plaintiff was working for them. (Id. at 8.) The defendants, therefore, claim that they communicated with Dragonfly with the purpose of letting them know of the non-competition agreement. (Id.)

■ In appropriate circumstances, courts have recognized "that anti-retaliation provisions may cover actions that are not directly employment-related." *Gore v.*

*Trs. of Deerfield Acad.*, 385 F.Supp.2d 65, 72 (D.Mass.2005). Nevertheless, in order to be subject to liability under Title VII for retaliation, a "defendant must (1) fall within Title VII's statutory definition of 'employer,' and (2) have exercised substantial control over significant aspects of the compensation, terms, conditions or privileges of plaintiff's employment." *Rivera v. Telefónica de P.R.*, 913 F.Supp. 81, 86 (D.P.R.1995) (citing *Magnuson v. Peak Technical Servs., Inc.*, 808 F.Supp. 500, 506 (E.D.Va.1992)). In this case there is no question that TSI is an employer under Title VII. *See* 42 U.S.C. 2000e(b) (an employer under Title VII includes any "person engaged in an industry affecting commerce ..., and any agent of such person....") The question, however, is whether TSI was plaintiff's employer at the time the alleged retaliatory actions took place and at the time that plaintiff engaged in the protected activity. The court finds that it was not. Plaintiff worked for TSI until December 10, 2007, and on that same date she filed a complaint before the ADU and EEOC. At the time that the alleged retaliatory actions took place, October, 2008, plaintiff was working for Dragonfly. Thus, its clear that if someone had any substantial control over the compensation, terms, conditions or privileges of plaintiff's employment it was Dragonfly and not TSI. Based on the foregoing, the court finds that plaintiff's Title VII retaliation claim fails.

■ It is important to note that regardless of whether TSI was plaintiff's employer, plaintiff's claim would have still failed. Although causal connection may be established due to the temporal proximity between the alleged retaliatory actions and the issuance of the Right to Sue letter, the defendants proffered reason for communicating with plaintiff's new employer was both legitimate and non-discriminatory. *See DeCaire v. Mukasey*, 530 F.3d 1, 19 (1st Cir.2008) (holding that close temporal proximity is sufficient to establish a *prima facie* case of retaliation). The defendants in this case did not take any adverse employment action against the plaintiff. *See Morales–Vallellanes v. Potter*, 605 F.3d 27, 36 (1st Cir.2010) (quoting *Lapka v. Chertoff*, 517 F.3d 974, 986 (7th Cir.2008)) (Examples of adverse employment actions in the retaliation cases include the following: (1) "termination of employment"; (2) "demotion evidenced by a decrease in wage or salary"; (3) "a less distinguished title"; (4) "a material loss of benefits"; (5) "significantly diminished material responsibilities"; or (6) "other indices that might be unique to a particular situation.") The fact that Dragonfly terminated plaintiff from her employment cannot be construed as a retaliatory action by TSI. As stated before, after finding out that plaintiff was working with Dragonfly, a direct competitor of TSI, TSI communicated with them to let them know about the non-competition agreement. Based on these facts there is no question that TSI would have still contacted Dragonfly regardless of whether or not she engaged in a protected activity. It is a logical and natural reaction for any company, including TSI, to take the appropriate measures to protect its business when its well being and stability are at risk. More importantly is the fact that there is no evidence that shows that plaintiff was deterred by TSI or any of the other defendants from engaging in the protected activity. *See Acosta v. Harbor Holdings & Operations, Inc.*, 674 F.Supp.2d at 368 (quoting *Noviello v. City of Boston*, 398 F.3d 76, 90 (1st Cir.2005)). Furthermore, plaintiff failed to provide any evidence that would show that the defendants' legitimate non-discriminatory reasons for its actions were pretextual. *See Kosereis v. Rhode Island*, 331 F.3d

207, 213 (1st Cir.2003) (stating that, as compared to a court's consideration of whether a plaintiff has established a *prima facie* case, "pretext analysis ... is more demanding"). Plaintiff only submits that the facts, as presented, establish that TSI's alleged non-discriminatory reasons for its actions were merely a pretext to hide their retaliatory and discriminatory animus. (Docket No. 52, at 5.) Plaintiff's argument is incorrect. It is well settled that after the defendant proffers a non-discriminatory reason for its actions, the plaintiff has to "prove, by a preponderance, that the defendant's explanation is a pretext for unlawful discrimination." *Mariani–Colón v. Dep't of Homeland Sec. ex rel. Chertoff,* 511 F.3d 216, 221 (1st Cir.2007). Plaintiff's "subjective speculation and suspicion" that she was treated unfairly is not enough to establish that the defendant's actions were pretextual. *Id.* at 222 (quoting *Quiñones v. Houser Buick,* 436 F.3d 284, 290 (1st Cir.2006)). Consequently, plaintiff's Title VII retaliation claim must be dismissed with prejudice.

### D. Puerto Rico Law Claims

Plaintiff filed supplemental claims pursuant to Puerto Rico Act No. 100 of June 30, 1959, as amended, P.R. Laws Ann. tit. 29, § 146 *et seq.;* Article 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141 and § 5142; Puerto Rico Act No. 80 of May 31, 1976, as amended, P.R. Laws Ann. tit. 29, § 185a *et seq.;* and Puerto Rico Act No. 115 of December 20, 1991, as amended, P.R. Laws Ann. tit. 29, § 149 *et seq.* (Docket No. 1, at 7, ¶ 33.) Since all of plaintiff's federal claims were dismissed, the court will not exercise supplemental jurisdiction over the Puerto Rico law claims which "posit novel and complex issues of state law...." *Szendrey–Ramos v. First BanCorp.,* 512 F.Supp.2d 81, 88 (D.P.R.2007); see *Del Toro–Pacheco v. Pereira–Castillo,* 662 F.Supp.2d 202, 217 (D.P.R.2009); *Meléndez v. Autogermana, Inc.,* 606 F.Supp.2d 189, 198–99 (D.P.R.2009). Accordingly, plaintiff's state law claims are dismissed without prejudice. *Cao v. Puerto Rico,* 525 F.3d 112, 116 (1st Cir.2008) (holding that when state law claims are dismissed without prejudice, a plaintiff is free to assert them in the appropriate state forum).

## IV. CONCLUSION

For the reasons set froth above, the defendants' motion for summary judgment is GRANTED in its entirety. Accordingly, plaintiff's federal claims are DISMISSED WITH PREJUDICE. Also, plaintiff's supplemental state law claims are DISMISSED WITHOUT PREJUDICE. The Clerk is directed to enter judgment accordingly.

### *OPINION AND ORDER*

This matter is before the court on motion to alter or amend judgment filed by plaintiff, Kareemah Amira–Jabbar, on August 9, 2010. (Docket No. 57.) Plaintiff's motion was opposed by the defendants, Travel Services, Inc., Joanne Ferguson, John Ross, Miguel Hernández–Roses and Gilbert Anthony Linares, on August 30, 2010. (Docket No. 60.) For the reasons set forth below, plaintiff's motion is hereby DENIED.

## I. OVERVIEW

Plaintiff moves for reconsideration of the opinion and order issued by the court on July 28, 2010. *See* Fed.R.Civ.P. 59(e) (Docket No. 55.) According to plaintiff, by granting summary judgment in favor of the defendants the court incurred in manifest error inasmuch as: (1) inferences were not viewed in the light most favorable to her; (2) the jury's roll was

usurped in determining whether she had complied with her burden in establishing a *prima facie* case of hostile work environment; (3) it was erroneously concluded that Title VII's anti-retaliation provisions did not extend to former employees; (4) the constructive discharge claim was not addressed when in fact she was constructively discharged from her employment with Travel Services, Inc. ("TSI"). (*Id.*) Defendants on the other hand argue that plaintiff's motion must be denied because no such errors were made. (Docket No. 60, at 2.) In essence, the defendants claim that plaintiff's dissertation is a rehash of her previous arguments in opposition to the various motions for summary judgment filed in this case. (*Id.*)

## II. STANDARD OF REVIEW

■■■■ Under Fed.R.Civ.P. 59(e) a party has twenty eight (28) days upon "entry of judgment, to file a motion seeking to alter or amend said judgment. The rule itself does not specify on what grounds the relief sought may be granted, and courts have ample discretion in deciding whether to grant or deny such a motion." *Colón v. Blades,* 734 F.Supp.2d 243, 245, 2010 WL 3432602, *1 (D.P.R. September 1, 2010) (quoting *Candelario del Moral v. UBS Financial Services Inc. of Puerto Rico,* 703 F.Supp.2d 79, 81 (D.P.R.2010) (citing *Venegas–Hernández v. Sonolux Records,* 370 F.3d 183, 190 (1st Cir.2004))). Nevertheless, courts only grant a Rule 59(e) motion when "the movant shows a manifest error of law or newly discovered evidence." *Rodríguez–Rivas v. Police Dept. of Puerto Rico,* 699 F.Supp.2d 397, 400 (D.P.R.2010) (quoting *Santiago–Sepulveda v. Esso Std. Oil Co. (P.R.), Inc.,* 638 F.Supp.2d 193, 197 (D.P.R.2009) (citing *Prescott v. Higgins,* 538 F.3d 32, 45 (1st Cir.2008))). "Rule 59(e) may not, however, be used to raise arguments that could and should have been presented before judg-ment was entered, nor to advance new legal theories." *Cintrón v. Pavia Hato Rey Hosp.,* 598 F.Supp.2d 238, 241 (D.P.R. 2009) (citing *Bogosian v. Woloohojian Realty Corp.,* 323 F.3d 55, 72 (1st Cir.2003)).

## III. ANALYSIS

### 1. Reasonable Inferences

■■■ Plaintiff argues that the court did not make all reasonable inferences in her favor because it agreed with the defendants that she had failed to establish elements four, five and six of her *prima facie* case of hostile work environment. (Docket No. 57, at 2.) According to plaintiff, she provided evidence that showed that TSI knew or should have known of the harassment but that it failed to implement prompt and appropriate action. (*Id.*) Specifically, plaintiff claims that she demonstrated that when Mrs. Ferguson, TSI's Executive Vice-president, heard Mr. Ross say that she belonged on the side of the road in Loiza cooking with her people, she did not take any corrective action. (*Id.*) Also, plaintiff claims that she showed that Mr. Ross used to make racial jokes about other ethnic groups and that TSI knew about it but that it never did anything. (*Id.*) In addition to proving these facts, plaintiff claims that she showed that it was an official practice at TSI to load company outing pictures on Facebook so all employees could have them, instead of sending them through email. (*Id.*)

The defendants do not contest that in assessing a motion for summary judgment, all reasonable inferences have to be made in favor of the non-moving party. (Docket No. 60, at 3.) However, the defendants do believe that plaintiff is inviting the court to make impermissible inferences by accepting self serving statements and conclusory allegations. (*Id.*) They argue that plaintiff cannot establish a *prima facie* case of race

discrimination based on the three incidents that occurred within a period of more than a year because they did not rise to the degree severity or pervasiveness required. (*Id.* at 3–4.) As to plaintiff's allegation regarding the other comments allegedly made by Mr. Ross, the defendants argue that she does not have any personal knowledge that she herself heard the comments directly from him. (*Id.*) The defendants claim that even if it was assumed that the comments were in fact heard by plaintiff there is no evidence of how severe or frequent the comments were made or how they interfered with anyone's terms and conditions of employment. (*Id.*) With respect to plaintiff's allegation that it was a company policy to upload company activity pictures in Facebook, the defendants claim that there is no evidence that TSI or anyone else for that matter, ordered or encouraged any of its employees to upload company activity pictures, much less comment on them. (*Id.* at 5.)

 "[W]hile it is true that, in the summary judgment context, a district court must draw all reasonable inferences in favor of the non-moving party, [it is] 'not obliged to accept as true or to deem as a disputed material fact, each and every unsupported, subjective, conclusory, or imaginative statement made to the Court by a party.'" *Méndez–Aponte v. Puerto Rico*, 656 F.Supp.2d 277, 281 (D.P.R.2009) (quoting *Torrech–Hernández v. General Elec. Co.*, 519 F.3d 41, 47 (1st Cir.2008)). If the non-moving party relies on such statements summary judgment should be granted, even if it is an employment discrimination case "where elusive concepts such as motive or intent are at issue...." *Meuser v. Federal Express Corp.*, 564 F.3d 507, 515 (1st Cir.2009) (quoting *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)); *see also Feliciano de la Cruz v. El Conquistador Resort*

*and Country Club*, 218 F.3d 1, 5 (1st Cir. 2000).

Although plaintiff claims that Mrs. Ferguson was present when Mr. Ross allegedly made the derogatory comment during the Christmas party in December, 2006, she did not allege nor is there any evidence that shows that she complained about the incident. Instead she assumes that because Mrs. Ferguson was allegedly there when the incident occurred that she had the obligation to take an appropriate remedial action but that she failed to do so. Notwithstanding plaintiff's disbelief, the court did make all reasonable inferences in her favor. After plaintiff complained about the candy cane incident on December 1, 2007 an investigation was conducted the following day. *Amira–Jabbar v. Travel Services, Inc.*, 726 F.Supp.2d 77, 86–87, 2010 WL 2989852, *5 (D.P.R. July 28, 2010). As part of the investigation every incident that was brought to TSI's attention by plaintiff was investigated, including the incident involving Mr. Ross. *Id.* The investigation revealed that plaintiff did not know what the comment was that Mr. Ross allegedly had made because according to her the comment was made in Spanish. *Id.* Plaintiff only said that she believed that Mr. Ross's comment was racial in nature. *Id.* As a result, Mr. Ross was not reprimanded. *Id.*

In the complaint and in her deposition, plaintiff relates the comment that Mr. Ross allegedly made. (Docket No. 1, at 8–9, ¶¶ 41–42 & Docket No. 31–3, at 2–3.) However, when TSI investigated all of the incidents that plaintiff had complained off she did not know what exactly Mr. Ross had said. Thus, there being no proper explanation as to plaintiff's contradictory version as to this fact the court need not make unreasonable inferences in her favor. *See Meuser v. Federal Express Corp.*, 564 F.3d at 515. Furthermore, the court can-

not, as plaintiff suggests, infer that Mr. Ross did in fact make the alleged discriminatory comments to her in the presence of Mrs. Ferguson and that no remedial action was taken because according to her Mr. Ross used to make racial slurs which TSI knew about, but never did anything about. The court cannot draw any reasonable inferences from such an assertion. *See Caban Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir.2007) (holding that a court does not have "to draw unreasonable inferences or credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective.") Having said that, there is also nothing that suggest that the court did not make reasonable inferences in favor of plaintiff regarding the Facebook incident. Plaintiff claims that it was a general practice at TSI to upload pictures on Facebook after every company outing. However, aside from plaintiff's deposition testimony there is no evidence that shows that the Facebook account belonged to TSI or that it condoned its use during company time. Hence, it cannot be assumed that TSI knew or should have known about the alleged discriminatory comment that was posted by Mr. Hernández. According to the record, when plaintiff finally complained about the incident to Mrs. Ferguson, TSI ordered its IT contractor to block access to the website for all office computers. *Amira–Jabbar v. Travel Services, Inc.*, 726 F.Supp.2d 77, 86–87, 2010 WL 2989852, *5 (D.P.R. July 28, 2010). Based on the foregoing, there is no question that plaintiff's allegations were taken as true and that all reasonable inferences were made in her favor.

### 2. Credibility Determinations

Plaintiff argues that it is the role of the jury and not that of the court to determine whether or not her claims rose to the level of severity and pervasiveness required. (Docket No. 57, at 5.) The defendants nev-

ertheless believe that the court's decision had nothing to do with credibility, but rather was based on the uncontested material facts that were supported by the evidence on the record. (Docket No. 60, at 5.)

It is well settled that "[c]redibility issues fall outside the scope of summary judgment." *Méndez Montes De Oca v. Aventis Pharma*, 579 F.Supp.2d 222, 224 (D.P.R.2008); *CMI Capital Market Inv. LLC v. Municipality of Bayamón*, 239 F.R.D. 293, 297 (D.P.R.2006). Summary judgment may only be granted if there are no genuine issues as to any material fact. *Zabala–Calderon v. United States*, 616 F.Supp.2d 195, 198 (D.P.R. 2008) (quoting Fed.R.Civ.P. 56(c)). Accordingly, "[i]n characterizing the hostile or abusive workplace, courts have drawn a continuum between commonplace indignities and actionable harassment. Offhand remarks, simple teasing, tepid jokes, and isolated incidents are at one end of the continuum. This type of behavior, standing alone, usually does not amount to a hostile work environment. Severe or pervasive sexual remarks, innuendoes, ridicule, and intimidation fall at the other end of the continuum and may support a jury verdict finding a hostile work environment." *Medina v. Adecco*, 561 F.Supp.2d 162, 171–73 (D.P.R.2008) (citations omitted).

Plaintiff is correct in that the court concluded that the defendants actions were not severe or pervasive enough as to establish a hostile work environment. *Amira–Jabbar v. Travel Services, Inc.*, —— F.Supp.2d ——, ——, 2010 WL 2989852, *4 (D.P.R. July 28, 2010). However, in doing so the court did not determine where along the continuum the defendants' conduct lied. *See Figueroa García v. Lilly Del Caribe, Inc.*, 490 F.Supp.2d 193,

204–05 (D.P.R.2007). After looking at the totality of the circumstances the court found that the three incidents plaintiff complained of were merely isolated incidents involving offhand comments. *Amira–Jabbar v. Travel Services, Inc.*, 726 F.Supp.2d 77, 84–86, 2010 WL 2989852, *4 (D.P.R. July 28, 2010). As the record showed, the first incident involving Mr. Ross took place in December, 2006. *Id.* Nine months later in September, 2007 the Facebook incident occurred. *Id.* Finally, the last incident involving the candy cane took place in December, 2007. *Id.* Furthermore, the court also found that there was no evidence that plaintiff was physically threatened and that the defendants' conduct did interfere with her work performance. *Id.* Despite of this, plaintiff stresses that as in *Danco, Inc. v. WalMart Stores, Inc.*, 178 F.3d 8 (1st Cir.1999) these incidents would have been enough to establish a hostile work environment. I disagree.

Although, the court did not explained why *Danco* was not controlling in this case it did considered it before ruling on the motion for summary judgment. The facts in *Danco* are distinguishable from those in this case. In *Danco,* the incidents alleged by plaintiff occurred within a period of one month, between October and November, 1994. *Id.* at 10–11. Unlike *Danco,* in this case the incidents alleged by plaintiff occurred over a span of a year. Also, although the incidents alleged in *Danco* were race related they involved physical violence, left long lasting effects and interfered with plaintiff's work. *Id.* at 16–17. Thus, the court's finding had nothing to do with credibility. Contrary wise, it was a matter of sufficiency of the evidence of which there was not enough.

### 3. Retaliation Claim

 Plaintiff argues that by determining that TSI was not her employer at the time the alleged retaliatory actions took place and at the time she engaged in the protected activity, the court erroneously concluded that Title VII's anti-retaliation provision did not extend to former employees. (Docket No. 57, at 7.) Plaintiff claims that even though she was not associated to TSI since December of 2007, it was not until September, 2008 when the Equal Employment Opportunity Commission ("EEOC") issued the Right to Sue letter that TSI first had the opportunity to retaliate against her. (*Id.*) She claims that due to the temporal proximity between the time the Right to Sue letter was issued and the time she was discharged, a reasonable jury could infer that TSI's reliance on the non-compete clause was a mere pretext in order to affect her relationship with her new employer, Dragonfly. (*Id.*) The defendants contend that no error was made in the assessment of plaintiff's claim. (Docket No. 60, at 7.)

The court acknowledges that it erred in finding that plaintiff's retaliation failed because at the time the alleged discriminatory acts took place she was not TSI's employee. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 346, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (finding that the term "employees" as used in the anti-retaliation provisions of Title VII includes former employees). However, it held that even if TSI was considered plaintiff's employer at the time of the supposed retaliatory incidents she complained off, plaintiff's claim would have still failed. *Amira–Jabbar v. Travel Services, Inc.*, 726 F.Supp.2d 77, 89–90, 2010 WL 2989852, *8 (D.P.R. July 28, 2010). The court reasoned that even though a causal connection could be established due to the temporal proximity between the alleged retaliatory actions and the issuance of the Right to Sue letter, the defendants' proffered reason for the adverse action was both legitimate and non-discriminatory. *Id.* As the record showed,

TSI only communicated with Dragonfly, a direct competitor of TSI, after finding out it that plaintiff was working for them in order to let them know about the existence of the non-competition agreement. *Id.* Despite this, plaintiff failed to present any evidence that demonstrated that the defendants' proffered reason was pre-textual. *Cachola–Bonilla v. Wyndham El Conquistador Resort & Country Club*, 577 F.Supp.2d 566, 584 (D.P.R.2008) (noting that the plaintiff is the one who has the ultimate burden of showing that the proffered reason is pre-textual and the adverse employment decision was the result of the defendant's retaliatory animus). Plaintiff simply believes that because there is a temporal proximity between the protected activity and the alleged retaliatory actions, the defendants' reliance on the non-compete clause is merely pre-textual. Once again plaintiff relies on "subjective speculation and suspicion" to prove that TSI's actions were in fact pre-textual. *Amira–Jabbar v. Travel Services, Inc.*, 726 F.Supp.2d 77, 90, 2010 WL 2989852, *8 (D.P.R. July 28, 2010) (quoting *Mariani–Colón v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 222 (1st Cir.2007)). Thus, the court correctly dismissed plaintiff's retaliation claim.

### 4. Constructive Discharge Claim

Plaintiff asserts that like the hostile work environment claim the constructive discharge claim should have not been dismissed. (Docket No. 57, at 7 & 8.) The defendants in turn argue that plaintiff's claim fails because there is nothing that suggests that the working conditions were so onerous, abusive, difficult or unpleasant that a reasonable person would have felt compelled to resign. (Docket No. 60, at 7.) "The Supreme Court has indicated that the hostile work environment claim is a 'lesser included component' of 'the *graver* claim of hostile-environment constructive discharge.' " *Acosta v. Harbor Holdings & Operations, Inc.*, 674 F.Supp.2d 351, 362 (D.P.R.2009) (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 149, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004)). This means that the "[c]reation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge case ... [T]he only variation between the two claims is the severity of the hostile working conditions." *Id.* Nevertheless, "the fact that [a] plaintiff endured a hostile work environment-without more-will not always support a finding of constructive discharge." *Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7, 28 (1st Cir.2002). This is so because the standard for a constructive discharge claim "is more onerous than the hostile work environment standard." *Bodman v. Maine*, 720 F.Supp.2d 115, 123, 2010 WL 2653388, *6 (D.Me. June 22, 2010).

 The court in this case did not err in dismissing plaintiff's constructive discharge claim. Plaintiff's claim was disposed of because she failed to make out a hostile work environment claim. *Amira–Jabbar v. Travel Services, Inc.*, 726 F.Supp.2d 77, 87–88, 2010 WL 2989852, *6 (D.P.R. July 28, 2010) (citing *Dykstra v. First Student, Inc.*, 324 F.Supp.2d 54, 68 (D.Me.2004)). In the brightest of scenarios assuming that plaintiff did establish a *prima facie* case for hostile work environment, the court would have still dismissed her claim for constructive discharge. In order to prove her claim, plaintiff needed to "offer evidence of more severe harassment than that required for a hostile work environment claim." *Luciano v. Coca–Cola Enterprises, Inc.*, 307 F.Supp.2d 308, 320 (D.Mass.2004) (*Hernández–Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43, 48 (1st Cir.1998)). However, plaintiff in this case failed to provide said evidence.

Thus, plaintiff's constructive discharge claim was properly dismissed.

## IV. CONCLUSION

For the reasons set forth above, plaintiff's motion to alter or amend judgment (Docket No. 57) is hereby DENIED.